ORDERED in the Southern District of Florida on _11/24/08_.



_____
Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| IN RE: | CASE NO. 08-13843-BKC-RBR |
| ANDREW J. GILLIG, | CHAPTER 7 |
| Debtor. / | |
| ANDREW J. GILLIG, | |
| Plaintiff, | |
| vs. | ADV. NO. 08-1338-BKC-RBR-A |
| SALLIE MAE, INC. | |
| Defendant. / | |

### MEMORANDUM OPINION

THIS MATTER came before the Court for trial on October 15, 2008, upon the Debtor's Complaint (the "Complaint") [D.E. 1] to determine the dischargeability of debt and the Answer thereto (the "Answer") [D.E. 10]. Upon consideration of the record, review of the witnesses, and being otherwise duly advised, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

**A.  Reasons for Filing**

Page 1 of 8

On May 14, 2008, the Debtor filed a bankruptcy petition under chapter 7. His bankruptcy schedules listed a house (the "Residence") with negative equity of $38,000.00. He co-owned the house along with a former spouse, Sabrina T. Gillig ("Sabrina"). (Wachovia Bank has since obtained stay relief to foreclose on the Residence in state court.) The Debtor also listed unsecured debts totaling $48,733.00. He does not dispute $753.00 of that total. The balance, $47,980.00, is disputed. It includes an alleged obligation to Sallie Mae, Inc. ("Sallie Mae") of $43,000.00, which is the subject matter of this adversary proceeding.

B.    **Background**

The Debtor and Sabrina married on March 3, 2003. During the marriage, Sabrina attended college. In 2004, she attended Keiser College ("Keiser"). Sabrina asked the Debtor to co-sign a student loan for her attendance at Keiser. The Debtor agreed; on June 18, 2004, he signed an $11,720.00 loan to Keiser to which Sabrina was the sole beneficiary. The Debtor does not dispute his signature on this particular obligation.

Sabrina next attended Barry University ("Barry") from 2005–2007. During this time, she owned a laptop computer (the "Laptop"), which the Debtor did not have access to. Sabrina used the Laptop to deliver applications for student loans to Sallie Mae. By contrast, the Debtor owned a desktop computer (the "Desktop"), to which Sabrina knew the password and had access. The Debtor testified that his Desktop password was identical to his e-mail password.

From March 2005 to March 2007, Sabrina applied for and received the following student loans (the "Barry Loans"):

| Date | Amount |
|---|---|
| 3/29/2005 | $6,000.00 |
| 5/20/2005 | $4,000.00 |
| 8/19/2005 | $5,000.00 |
| 4/7/2006 | $6,500.00 |

        9/1/2006                                   $6,000.00

        3/14/2007                                $4,000.00

The Barry Loans applications were electronically transmitted documents. Neither Sabrina nor the Debtor physically signed them. Sabrina made these applications on the internet, and clicked a button to electronically sign them. She testified after she completed each application, the Debtor responded to an e-mail message from Sallie Mae to sign as a co-obligor. However, the Debtor stated that he never knew of these loans and that Sabrina in fact told him that she attended Barry on a full scholarship. Sallie Mae did not produce any documents evidencing e-mail authorizations from the Debtor.

The marriage soured in late 2006. The Debtor moved out of the Residence in early January 2007. He returned in the middle of that January for a week and, after a failed marriage counseling session, never returned. Sabrina agreed to end marriage counseling after that point, as she too thought the marriage was irretrievable.

The Debtor filed for divorce on February 13, 2007. Contending that the Debtor physically abused her daughter, Sabrina had a restraining order placed against him. The Debtor in turn requested a restraining order be placed against Sabrina. A Final Judgment for Dissolution of Marriage (the "Judgment") was entered on July 30, 2007. The Judgment stated that Sabrina alone would occupy the Residence and be responsible for its mortgage payments. Until that time, the Debtor had paid the mortgage obligations. The Judgment also incorporated the terms of a Marital Settlement Agreement, including following clause: "The wife shall pay the following bills and will not at any time ask the husband to pay these bills: A. All her personal debts; B. All her student loan."[1] The settlement also stated that the Debtor and Sabrina would

---

[1] The use of the term "loan" in its singular form may not be a grammatical error if Sabrina had indeed not disclosed the Barry Loans to the Debtor.

sell the Residence and use the proceeds as follows: "Wife shall pay off her student loan which is approximately $11,500.00. Those $11,500.00 shall be paid from the proceeds of the sale of the marital property...Husband shall have $25,000.00 from the proceeds of the sale of the marital property."

The Debtor bought the Residence after selling a condominium titled in his name alone. He received approximately $70,000.00 in net proceeds from the condominium's sale and used $50,000.00 of those proceeds as a down payment on the Residence. The Debtor thought that he retained equity in the Residence at the time of the divorce, as the Marital Settlement Agreement's $25,000.00 distribution clause evidences. However, the Debtor and Sabrina had executed an equity line or second mortgage on the Residence. Without informing the Debtor, Sabrina wrote numerous checks from the equity line which included the following:

| NUMBER | DATE | PAYEE | AMOUNT |
| --- | --- | --- | --- |
| 104 | 01-06-06 | Cash | $11,600.00 |
| 109 | 08-05-06 | Sabrina T. Gillig | $3,800.00 |
| 110 | 09-06-06 | Sabrina T. Gillig | $4,201.42 |
| 112 | 12-14-06 | Sabrina T. Gillig | $4,000.00 |
| 113 | 12-02-07 | Maroone Kia | $1,675.19 |
| 114 | 12-18-07 | Sabrina T. Gillig | $4,500.00 |

After all of these checks cleared, the equity in the Residence was minimal or none. Sabrina eventually stopped making mortgage payments and Wachovia has since obtained stay relief to foreclose on the Residence.

Following the divorce, a fraud unit of Sallie Mae contacted the Debtor about the Barry Loans. In response, the Debtor delivered an ID Theft Affidavit. In it he stated, "Ex-wife told me she had full scholarship to go to Barry. She signed all of the student loans using my name and without my knowledge. Proof of this is evidenced by the fact that the most recent loan (3-21-

07) was taken out more than one month after I filed for divorce! I never signed for these loans and did not know they existed until I sent a Fraud Alert to the credit companies and got back my credit report with these six loans on there."

## CONCLUSIONS OF LAW

Two issues exist in this case: (a) whether the Court has jurisdiction over this matter; and, (b) whether the debt that the Debtor owes to Sallie Mae is dischargeable.

### A. Jurisdiction

In its opening statement [D.E. 37], the Defendant argues that, "This matter is not a core proceeding...The issues in this adversary proceeding do not arise under Title 11, and are not related to the bankruptcy case, and therefore, should not have been brought in the bankruptcy court."

Fed.R.Bankr.P. 7012(b) provides in part:

(b) ...Rule 12(b)–(h) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge.

As stated, the Defendant argues that this is a non-core proceeding its opening statement. An opening statement is not a responsive pleading, however. The Answer, which is a responsive pleading, says, "Sallie Mae anticipates raising one or more of the following affirmative defenses...lack of subject matter jurisdiction," and, "Defendant believes that Section 1337 of Title 28 is inapplicable to this matter and that further, this matter may not be a core proceeding." The Answer thus suggests making an eventual jurisdictional argument. It does not admit or deny that the proceeding is core or non-core as Rule 7012 requires. Nor does it include a statement that the Defendant does or does not consent to entry of final orders or judgment by the Court.

Notwithstanding its procedural flaws, the Defendant's jurisdictional argument fails on

substantive grounds. 28 U.S.C. §1334(b) states that bankruptcy courts have jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §157(b)(1) elaborates on the "arising in" and "arising under" concepts when it provides that, "...Bankruptcy judges may hear and see all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11..." Finally, Section 157(b)(2)(I) defines a "core proceeding" as one that includes, but is not limited to, "determinations as to the dischargeability of particular debts."

The Complaint seeks discharge of a student loan debt owed to Sallie Mae; therefore, this matter is a core proceeding over which the Court has jurisdiction. See Hall v. United States Dep't of Educ. (In re Hall), 293 731, 736 (Bankr. N.D. Ohio 2002) ("The instant complaint involves the dischargeability of a student loan debt...Pursuant to 28 U.S.C. §157(b)(2)(I), this matter is deemed a core proceeding over which this Court has the jurisdictional authority to issue final orders").

As 28 U.S.C. §1334(b) states, bankruptcy courts also have jurisdiction over civil proceedings "related to cases under title 11." "Related to" in this context means when a result could conceivably have an effect on the estate being administered in bankruptcy. Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan), 276 Fed. Appx. 963, 966 (11th Cir. Fla. 2008). As stated, Sallie Mae holds a $43,000.00 disputed claim against the Debtor's estate. Should Sabrina default on her student loans–certainly a possibility given her inability to make mortgage payments on the Residence–the Debtor as guarantor would be liable for that debt. Thus, even if one assumes, *arguendo*, that this matter is not a core proceeding, it is still "related to" the bankruptcy case and under the jurisdiction of Court via 28 U.S.C. §1334(b).

### B.    Dischargeability

The factual issues presented go beyond the written direct testimony of the parties. The Court listened to the two witnesses: the Debtor and Sabrina. The candor and demeanor of

each witness impacted this decision.

The Court's primary concern was whether or not the Debtor had issued a document authorizing his electronic signature on the Barry Loans. Sabrina, not the Debtor, testified that one authorizes an electronic signature for each Barry Loan by e-mail. In other words, the only party describing the procedure for authorizing such loans is that of the primary obligor. For reasons unknown to the Court, the Defendant failed to produce the alleged e-mail receipt which would have shown the authorization as described.

The testimony of Sabrina lacks credibility. The Defendant paid for her round trip airfare from Tampa, Florida to Fort Lauderdale without subpoena. Her motivations for appearing are unknown.

Sabrina stated that she applied for each of the Barry Loans in the same manner. She claims that asked the Debtor to co-sign the loans. He allegedly agreed and sent a requisite e-mail reply to Sallie Mae. This is a plausible scenario for the Barry Loan agreements entered into prior to January 2007.

However, Sabrina also testified that the Debtor exhibited violent behavior, including violent behavior against her daughter, which led her to request a restraining order against the Debtor in 2007. The Debtor filed for divorce on February 13, 2007. This occurred *one month prior to the application of the last Barry Loan.* Sabrina thus testified that after the Debtor had left the Residence, filed divorce papers, and been subjected to a restraining order, he signed a $4,000.00 loan guarantee to Sallie Mae on March 14, 2007. The Court finds that testimony unpersuasive. The fact that all five loans that proceeded the March 14 loan were handled in an identical manner to the March 14 loan casts doubt on them as well.

The Court also notes the lack of disclosure by Sabrina in the Divorce Court. Throughout the divorce proceeding, the Debtor was concerned about two issues: (a) obtaining his believed

equity in the Residence; and, (b) having Sabrina be solely responsible for her student loan. The Residence of course lacked equity. The reason that the Debtor remained unaware of this was Sabrina's her failure to disclose the numerous checks that she wrote from the home equity line.

The Debtor was equally misinformed about the student loan debt. The student loan debt was quantified in the Marital Settlement Agreement as $11,500.00, the approximate amount of the original loan for Sabrina to attend Keiser. However, the actual loan amount, which included the Barry Loans, exceeded $41,720.00. The evidence that Debtor, at the time of the divorce, believed the "student loan" to be only $11,500.00 bolsters his testimony of not knowing about the Barry Loans. After observing the candor and demeanor of the Debtor, the Court concludes that Debtor spoke truthfully that he did not know at the time of the divorce of Sabrina's Barry Loans and did not participate as a co-signer for the Barry Loans.

## CONCLUSION

Based on the foregoing, the Court shall enter a separate final judgment determining that the Barry Loans debt is dischargeable.

###

The Clerk shall provide copies to:

Debtor
Gary Lublin, Esq.
Robert Meyer, Esq.